# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL OKPOR** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-1074 |
| | : | |
| OSCAR SAFARI WILLIAMS, SANDRA M. CLERK, SMP MOTORS, SWEET MOTHER INC., SANDRA CLERK WILLIAMS, OLA SOLANKE, ENGLE STREET LLC, JOHN DOE 1-10, VShip | : : : : : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                       **March 13, 2025**

      This case arises from a business arrangement gone awry. Mr. Okpor, proceeding pro se, alleges that he entered into an agreement with two businessmen — Mr. Williams and Mr. Solanke — who offered to store his goods in a Pennsylvania warehouse. However, according to Mr. Okpor, Mr. Williams and Mr. Solanke sold his items without consent and shipped them to Africa. He further claims that they conspired with various entities, including a shipping company called VShip, to defraud him.

      Most defendants, including Mr. Williams, other defendants associated with him, and VShip, failed to respond to Mr. Okpor's complaint. After sincere and protracted attempts by Mr. Okpor to litigate this case, we were prepared to grant him a default judgment against all defendants. But the day before we entered that judgment, Mr. Williams, the other defendants associated with him, and VShip suddenly appeared and requested that we hear their case. Because Mr. Okpor had made the requisite showing for a default judgment, and the appearing defendants all remained in default, we granted Mr. Okpor his judgment despite the belated

requests.

Mr. Williams, the other defendants associated with him, and VShip now seek relief from that default judgment. Mr. Okpor vigorously opposes these requests, arguing that allowing them to litigate at this stage would be unfair. Requests to lift default judgment often challenge a judge to balance fairness to the plaintiff against the imperative to conduct an earnest search for the truth. This is difficult result for Mr. Okpor, who worked diligently and patiently to obtain a default judgment in this case. However, fairness to Mr. Okpor is not the sole consideration. We find that any actual prejudice to Mr. Okpor is limited and that the defendants have presented a viable defense. It would be unjust not to resolve this dispute on the merits. Accordingly, we grant the requests for relief from the default judgment, and this case will proceed from here.

I.  **Factual Background**[1]

Mr. Okpor alleges that Oscar Williams and Ola Solanke, together with a variety of other named defendants, conspired to steal Mr. Okpor's property and ship it to Africa. DI 2 at 4. This scheme allegedly began in August 2021, when Mr. Okpor had a variety of "goods[,] commodities" and vehicles in New Jersey that he was unable to sell due to the COVID-19 pandemic. DI 32 at 6. After being introduced by a friend, Mr. Okpor purportedly met Mr. Williams in New Jersey where Mr. Williams represented himself as a "very successful auto

---

[1] The factual history and allegations come from the complaint, DI 2, and the amended complaint, DI 32. We find DI 2 incorporated by reference into DI 32. *See Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 341 n.1 (3d Cir. 2014) ("We also consider the documents incorporated by reference in the amended complaint."); *Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799, 800 n.1 (3d Cir. 2009) (acknowledging that pro se plaintiff incorporated original complaint into amended complaint by reference); *Lynch v. City of Phila.*, 194 F. App'x 89, 92 (3d Cir. 2006) (reasoning that district court has discretion to determine whether pro se plaintiffs incorporate original complaint into amended complaint).

dealer [and] cars salesman." *Id.* at 5 (cleaned up).  Mr. Williams also mentioned that he had a "very trusted friend and business partner," Mr. Solanke, who owned a warehouses in Chester, Pennsylvania.  *Id.*  According to Mr. Okpor, Mr. Williams promised that he and Mr. Solanke could sell Mr. Okpor's goods and automobiles.  *Id.* at 6.  Mr. Okpor valued these items as "worth over $200,000."  *Id.*

Two days later, Mr. Williams took Mr. Okpor to meet Mr. Solanke at Mr. Solanke's apartment in Philadelphia.  *Id.*  According to Mr. Okpor, they entered into a verbal contract on August 6, 2021, to help sell Mr. Okpor's goods if he moved them to the Chester, Pennsylvania warehouse, also known as Engle Street LLC.  *Id.* at 7.  The agreement involved splitting profits.  *Id.*  Mr. Solanke subsequently allowed Mr. Okpor to move his things to Engle Street.  *Id.*

Mr. Okpor describes the arrangement as an "act of trick or deceiving or misrepresenting," such that "Mr. Solanke and Mr. Williams decei[ved] and tricke[d]" Mr. Okpor to deprive him of his "goods, commodities, and vehicles."  *Id.* at 8.  He says they conspired with all the named defendants to deny him access to his items, steal them, and "ship them to Africa."  DI 2 at 4; *see also* DI 32 at 2.  Mr. Okpor also alleges that Mr. Williams "borrowed over $20,000 . . . to buy solar panel[s for] Africa and denied paying [Mr. Okpor] his money back."  DI 2 at 4.

**1. Service, motions to dismiss, and requests for default judgment.**

On March 15, 2022, Mr. Okpor filed a complaint against "Oscar Safari Williams, Sandra M. Clerk, SMP Motors, Sweet Mother Inc., [and] Sandra Clerk Williams" (the "Williams defendants"), as well as "Ola Solanke, Engle Street LLC, John Doe 1-10, and VShip."  DI 2. He also filed a motion to proceed in forma pauperis, DI 1, which we granted, DI 4.  In the

3

summer of 2022, the U.S. Marshals Service served the summons and complaint directly on Mr. Solanke, DI 7; on Joshua Williams for Oscar Safari Williams, SMP Motors, Sandra M. Clerk, and Sweet Mother Inc., DI 8; and on Elizabeth Lukic for VShip, DI 12.

On July 29, 2022 and August 18, 2022, Mr. Solanke and Engle Street LLC, then represented by counsel, filed separate but substantively identical motions to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. DI 9; DI 14. On September 16, 2022, Mr. Okpor requested default against all other defendants, none of which had appeared, and the Clerk of Court entered default against them. DI 17. We granted Mr. Solanke and Engle Street's motions and gave Mr. Okpor leave to amend his complaint, DI 26, which he did, DI 27; DI 30; DI 32. Mr. Solanke and Engle Street, still represented by counsel, filed an answer to the amended complaint on May 15, 2023. DI 34.[2] Mr. Okpor then moved for default judgment against all defendants in default, first on January 27, 2023, then on April 18, 2023, June 27, 2023, and July 14, 2023. DI 18; DI 28; DI 39; DI 45. We denied each of these motions as premature. DI 42; DI 48.

On January 18, 2024, counsel for Mr. Solanke and Engle Street filed a motion to withdraw from representation. DI 52. We held a case management conference and granted counsel's motion. DI 53; DI 57. No substitute counsel appeared for Mr. Solanke or Engle

---

[2] On August 22, 2023, we referred this case to Judge Wells for settlement purposes. DI 48. Judge Wells ordered Mr. Okpor to provide defendants with "all names of potential witnesses, bills of lading, U-Haul storage proofs, towing receipt, car titles and proof of purchase, photographs, etc. to indicate what items were in fact delivered to defendant(s) for sale and their value" by September 22, 2023 and required that the parties attend a settlement conference after that. DI 50. Mr. Okpor filed documentation on the docket in October, noting he had sent the information to "defendants attorney on September 19th, 2023" but "defendant did not receive[]" it. DI 51.

4

Street.

On February 21, 2024, Mr. Okpor filed another motion for default judgment, this time against all defendants, DI 56, which we again denied as premature, DI 57. We provided Mr. Okpor with a deadline to request default against Mr. Solanke and Engle Street, as well as a deadline to file a motion for default judgment against any and all defendants. DI 60. Mr. Okpor then filed a motion for default judgment, as well as a supplemental motion for default judgment, and a motion for summary judgment. DI 61; DI 62; DI 63. Default was entered as to Mr. Solanke and Engle Street. DI 65. We dismissed all other defendants for failure to prosecute, as it appeared Mr. Okpor only intended to proceed against Mr. Solanke and Engle Street. DI 64. We set a hearing for July 8, 2024. *Id.*

Prior to the hearing, Mr. Okpor filed a motion for reconsideration, requesting default judgment against *all* defendants, not just Mr. Solanke and Engle Street. DI 68. We held the default judgment hearing on July 8, 2024 at 10:00 AM, DI 71, at which time Mr. Okpor explained that he intended to proceed against all defendants. We granted Mr. Okpor's motion for reconsideration, adding back the Williams defendants and VShip. DI 72.[3]

---

[3] Shortly after the hearing concluded, a letter was filed on the docket on behalf of Mr. Solanke, which had been dropped off at the courthouse that morning. DI 70. The letter read "Dear Sir/Madam Due to family emergency, had to respond to the death of my mother currently out of the country will be traveling back flight July 9th, 2024. Thank you for your consideration. Sincerely, Ola Solanke." *Id.* The letter was signed by an unrecognizable name with the notation "POA," understood to mean "Power of Attorney." *Id.* We immediately ordered "whoever filed defendant's response (DI 70) on behalf of Ola Solanke [to] file a letter identifying himself or herself, explaining his or her relation to Mr. Solanke, explaining why the address on the document is different from Mr. Solanke's address listed on the docket of this case, and explaining his or her intentions in this case, no later than July 17, 2024." DI 73. No response was ever filed.

On July 24, 2024, we directed the Clerk of Court to enter default as to the Williams defendants and VShip, scheduled another default judgment hearing as to all defendants for August 27, 2024 at 11:00 AM, and directed the Clerk of Court to mail the order "to all defendants by certified mail under the Pennsylvania Rules of Civil Procedure no later than July 29, 2024." DI 75. We also ordered Mr. Okpor to file additional documentation regarding valuation and proof of ownership for his items, *id.*, and Mr. Okpor filed his supplements on August 8, 2024, DI 77; DI 78.

### 2. Grant of default judgment and requests for relief

On August 22, 2024, Olivia Gabriel, Esq. appeared on behalf of the Williams defendants (i.e., Oscar Williams, Sandra M. Clerk, Sandra Clerk Williams, SMP Motors, and Sweet Mother Inc.). DI 79. John Levy, Esq. appeared for VShip the next day. DI 80. On August 26, 2024, the day before the hearing, Ms. Gabriel filed a motion for continuance and Mr. Levy filed a motion to set aside default as to VShip. DI 81; DI 82.

We held the default judgment hearing as scheduled on August 27, 2024. DI 84. Mr. Okpor and Ms. Gabriel attended. Mr. Levy requested to attend telephonically but was unreachable during the hearing. We denied the motion seeking a continuance and the motion to set aside default. DI 83. In an order explaining our reasoning, we remarked "[t]he last-second appearance of certain defendants and counsel in this case is troubling, and as Mr. Okpor explained in today's hearing, rings with a certain unfairness. The timing has not been explained. Relying on the record, as we must, we think the most appropriate course of action is to enter this default judgment. To the extent that defendants continue to litigate using avenues provided by the rules, we will take that up in due course." *Id.* at 2 n.3. We entered

6

judgment for Mr. Okpor in the total amount of $160,174 based on satisfactory establishment of liability, ownership of the listed property, and value of the listed property as detailed in the order. *Id.*

Ms. Gabriel filed a motion to vacate default and set aside judgment on August 30, 2024, DI 86, followed by an amended motion for the same relief on September 5, 2024, DI 87, on behalf of the Williams defendants. Mr. Okpor opposed, DI 90, and the Williams defendants responded with additional evidence, DI 91.[4]

After Mr. Levy was unreachable during the default judgment hearing, which he had requested to attend telephonically, he filed a letter on the docket explaining the situation and telling us what he would have said at the hearing. DI 85. He noted "I will file a formal motion for reconsideration and to vacate the default judgment after Labor Day. The purpose of this letter is to apologize and put a marker down on the issues." *Id.* On October 29, 2024, having heard nothing from VShip since Mr. Levy's letter two months prior, *id.*, we ordered VShip to file "any motion for reconsideration or other relief from judgment no later than November 8, 2024." On November 7, 2024, VShip filed its motion to set aside default judgment, DI 94, which Mr. Okpor opposed, DI 96.

## II. Analysis

"The general purpose of Rule 60, which provides for relief from judgments for various reasons, is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*,

---

[4] Mr. Okpor also filed a motion to deny defendants' motion. DI 92. We denied this motion because "Mr. Okpor has already opposed the motion to vacate default judgment, which will be decided in due course. A further motion is unnecessary." DI 93.

572 F.2d 976, 977 (3d Cir. 1978). "Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951). We must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Prejudice usually concerns "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008). A litigable defense is one that "if established at trial, would constitute a complete defense." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). We must "examin[e] the substance of [the] defense," *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979, 982 (3d Cir. 1988), and defendants must put forth "some specificity," *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Finally, culpable conduct "means actions taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). No one factor is necessarily dispositive. *Mrs. Ressler's Food Prods. v. KZY Logisticis LLC*, 675 F. App'x 136, 142-43 (3d Cir. 2017) (finding culpability alone insufficient to preclude vacatur of default judgment); *see also Hill v. Williamsport Police Dep't,* 69 F. App'x 49, 52 (3d Cir. 2003) ([T]wo of the three *Chamberlain* factors (prejudice and culpable conduct) suggest [plaintiff] should not have been granted a default judgment, and one factor (litigable defense) is inconclusive. In this context, we cannot say that the District Court's refusal to enter a default judgment was an abuse of discretion.").

We find it particularly difficult to strike the proper balance here. On the one hand, Mr. Okpor has tried to litigate this case for nearly three years but has been unable to do so because of defendants' failure to respond. And it was not until the eve of default judgment that defendants finally appeared. On the other hand, the judgment did not follow from litigation on the merits, and it seems apparent that denying defendants' requests for relief may result in injustice. Because we must resolve "doubtful cases . . . in favor of the party moving to set aside the default judgment," *$55,518.05 in U.S. Currency*, 728 F.2d at 194-95, and based on our analysis below, we will grant relief from the default judgment, lift default as to the moving defendants, and proceed with litigation on the merits.

1. **Prejudice**

While prejudice typically involves "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party," it can also encompass the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Briscoe*, 538 F.3d at 259 (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). There has been no suggestion that defendants' delay caused "irretrievable loss of evidence" or material "dimming of witnesses' memories." *Id.* But there is a sense that defendants have impeded Mr. Okpor's "ability to prepare effectively a full and complete trial strategy." *Id.* At a fundamental level, Mr. Okpor could not proceed to trial because defendants were in default. All he was able to do was request default and move for default judgment, which he did.

But defendants are here now and, so they say, are prepared to litigate. The prejudice to Mr. Okpor is a delay in recovery (assuming he succeeds on the merits). But delayed recovery is

9

not enough to justify maintaining a default judgment. "[D]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Emcasco Ins. Co., v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). Delay causes sufficient prejudice when it hinders the plaintiff's "ability to pursue the claim." *Id.*

We see no indication that defendants' delay hindered Mr. Okpor's *ability* to proceed on the merits. Mr. Okpor tells us it would "be unfair" for us to grant defendants' motions after he "litigat[ed] this case for [the] past two and [a] half years." DI 90. We appreciate the sentiment, and the same goes for the time and energy that we have dedicated to this case. But in reviewing Mr. Okpor's responses, and analyzing the record as a whole, we do not see any indication that the delay led to lost evidence or created unrecoverable damages.

Moreover, this case remains at an "early stage of the proceeding," *Emcasco*, 834 F.2d at 74, despite it being filed nearly three years ago. As the docket reflects, there has been little substantive movement in this case over the years, though many motions have been filed. While the delay was largely due to various defendants' failure to appear and respond, it was not entirely the fault of moving defendants. Some of the delay was due to non-moving defendants, Mr. Solanke and Engle Street, whose counsel withdrew due to nonpayment and noncommunication. DI 52. And Mr. Okpor also contributed to delays, filing numerous premature motions for default and default judgment, missing filing deadlines, and failing to attend conferences. *See e.g.*, DI 43; DI 45; DI 60. We raise this not to discount Mr. Okpor's extensive efforts to move this case forward, but to acknowledge that the jumbled docket is not entirely the moving defendants' fault. Given what Mr. Okpor regards as the stakes of this case, he ought to retain counsel. He has not,

10

which is his right, but that is part of why this case has been moving slowly.  Reviewing the record as a whole, relief was certainly delayed, but we do not find the type of prejudice required for a denial of defendants' motions.  *Emcasco*, 834 F.2d at 74.  If defendants meaningfully engage in litigation going forward, it seems that Mr. Okpor will be able "to prepare effectively a full and complete trial strategy."  *Briscoe*, 538 F.3d at 259.

2. **Litigable defense**

For this factor to support relief, defendants must assert a defense with some specificity that "if established at trial, would constitute a complete defense."  *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  We must "examin[e] the substance of [the purported] defense" to determine whether it is "meritorious" and do so at a level above mere facial scrutiny.  *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979, 982 (3d Cir. 1988). We address the Williams defendants' arguments first and then turn to VShip.

The Williams defendants tell us that "they can credibly argue and prove . . . that every item that they contracted with Plaintiff to ship [to] Nigera [was] shipped to Nigera . . . but were never claimed by Plaintiff at the port of entry."  DI 87 at 11-12.  Mr. Okpor responds that he "never authorized any body or defendants as agent(s) to ship [the] goods to Africa."  DI 90 at 8.  He says the Williams defendants' representations are "fraudulent statements."  *Id.*  This is a dispute of fact — whether Mr. Okpor authorized defendants to ship his goods to Africa.

If Mr. Okpor authorized defendants to ship his goods to Africa, then the Williams defendants would presumably succeed at trial.  That is enough at this stage to establish a meritorious defense.  *Tozer*, 189 F.2d at 244 (finding a meritorious defense despite a "one hundred eighty degree disagreement as to the actual terms of [the disputed] agreement"); *see also*

*Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (explaining that the defendant "need not establish the actual liability . . . beyond doubt in its pleading; a meritorious defense is presumptively established when the allegations of defendant's answer, if established on trial would constitute a complete defense to the action.") (quotations omitted). The Williams defendants also point out other potentially meritorious arguments. Because we find that this factor favors relief from the judgment, we do not consider the strength of the additional arguments.

Mr. Okpor's only allegations against VShip relate to its involvement in the alleged conspiracy. DI 2 at 4. Under Pennsylvania law, a civil conspiracy claim requires that "two or more persons combine or agree intending to commit an unlawful act or do an otherwise lawful act by unlawful means." *Weaver v. Franklin Cnty.*, 918 A.2d 194, 202 (Pa. Commw. Ct. 2007). VShip denies any involvement, stating "VShip had absolutely nothing whatever (sic) to do with the business arrangement Mr. Okpor had with Oscar Safari-Williams, SMP Motors, or any of the other defendants." DI 94-1 at 5. Further, VShip tells us that it "followed its normal operating procedures in taking the bookings made by Oscar Safari Williams, and the containers were safely delivered to Nigeria, without incident." *Id.* at 4. If VShip proves this at trial, it would presumably succeed on the merits. Therefore, VShip has met the requirements of a meritorious defense under *Tozer*. 189 F.2d at 244.

   **3. Culpable Conduct**

Culpable conduct "means actions taken willfully or in bad faith." *Gross*, 700 F.2d at 123-24. This requires more than "mere negligence," *Hritz*, 732 F.2d at 1183, and includes "willful disregard for responding to Plaintiffs' legal communications." *World Entm't Inc. v.*

12

*Brown*, 487 F. App'x 758, 762 (3d Cir. 2012). "Innocent mishaps or mistakes, by contrast, do not suffice as culpable." *Lee v. Mecca*, No. 22-2871, 2023 WL 5814783, at *2 (3d Cir. Sept. 8, 2023).

Both the Williams defendants' conduct and VShip's conduct certainly approach the bar of culpability. The Williams defendants make one argument for why their conduct should not be considered culpable: the default judgment motion was premature because the amended complaint had not been served. DI 87 at 12-13. This argument is unavailing. A plaintiff is only required serve an amended complaint prior to requesting default if the amended complaint asserts "new claims for relief" against a defendant. Rule 5(a)(2); *see also Auto. Rentals, Inc. v. Bama Com. Leasing LLC*, No. 17-3877, 2018 WL 1469047, at *1 n.1 (D.N.J. Mar. 26, 2018) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."); *Steinhardt v. Bernardsville Police Dep't*, No. 20-2825, 2021 WL 3929321, at *1 n.1 (3d Cir. Sept. 2, 2021) ("Since the amended pleadings appear to have asserted new claims for relief against these defendants, Federal Rule of Civil Procedure 5(a)(2) does not excuse service."). Mr. Okpor's amended complaint supplemented the factual allegations of his first complaint but did not assert any new claims for relief. *Compare* DI 2 *with* DI 32. Because the Williams defendants were already in default when Mr. Okpor amended his complaint — and had been in default for over seven months — he was under no obligation to serve the amended complaint on them. Rule 5(a)(2). Their obligation to respond was not excused by any failure of Mr. Okpor to serve the amended complaint.

Moreover, Mr. Okpor tells us that he had a "series of contact(s) with defendant Oscar

13

Safari Williams regarding this case" and that Mr. Williams threatened to "not respond to any court complaint." DI 90 at 3. And Mr. Okpor is right that "[d]efendants never demonstrate[d] a justifiable excuse for their default." *Id.* Assuming what Mr. Okpor tells us is accurate, we find the Williams defendants' conduct to be culpable, and this factor favors denying relief from the default judgment.

As to VShip, we are told that VShip's corporate secretary, Ali Siddiqui, "made a mistake when he read Mr. Okpor's hand-written Complaint and failed to immediately send it to an attorney." DI 94-1 at 5. According to Mr. Siddiqui, "He read it, had no record of Mr. Okpor being a customer of VShip, did not see any specific facts alleging what VShip had supposedly done wrong, and being a freight forwarding agency, would not have been involved with stealing cargo or lending money to anyone." *Id.* Mr. Siddiqui claims to have "investigate[d]" Mr. Okpor's allegations, but he was unable to go far because "there were no booking numbers in the complaint" that would correspond to freight booking. *Id.* at 7. He then emailed Mr. Okpor asking for booking numbers, but the email "bounced back as undeliverable." *Id.* The then-counsel for Mr. Solanke and Engle Street responded to Mr. Siddiqui, reporting "that he did not have the booking numbers." *Id.* Mr. Siddiqui conducted no further investigation and failed to consult an attorney. *Id.* He now "readily concedes" that he erred in not obtaining counsel. *Id.*

As compared to the Williams defendants, VShip's conduct is less culpable. And it does not appear that Mr. Siddiqui acted in bad faith. But his failure to respond likely constitutes "willful disregard for responding to Plaintiffs' legal communications." *World Entm't Inc.*, 487 F. App'x at 762. We are not persuaded by VShip's attempt to characterize the failure to respond as merely an innocent mistake. Mr. Siddiqui served as the corporate secretary for VShip and had

14

done so since the year 2000.  DI 94-2 at 2.  When VShip was served with the complaint, it was forwarded to Mr. Siddiqui, likely due to his role at the company.  *Id.* at 19.  The summons, served with the complaint, states:

> A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure . . . If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint."  DI 5.

In our view, Mr. Siddiqui seeing that language, choosing to "investigate the allegations," DI 94-1 at 7, corresponding with an attorney in the matter, *id.*, and then opting against responding constitutes a "willful disregard for responding to Plaintiffs' legal communications." *World Entm't Inc.*, 487 F. App'x at 762.  Accordingly, we find VShip's failure to respond to be culpable conduct.

However, as discussed above, no one factor is necessarily dispositive.  *Mrs. Ressler's Food Prods.*, 675 F. App'x at 142-43.  Culpability alone generally does not outweigh the other factors supporting relief.  *Id.*  This is especially true in the absence of "direct evidence that [the defendant] acted in bad faith."  *Id.* at 142.  Given that the other two factors — prejudice and meritorious defense — favor granting defendants' motions, our finding of culpability does not compel leaving the default judgment in place.

### III.    Conclusion

For the foregoing reasons, we grant relief from the default judgment as to Oscar Safari Williams, Sandra M. Clerk, Sandra Clerk Williams, SMP Motors, and Sweet Mother Inc. (the Williams defendants) and as to VShip.  We also lift the default as to each of those defendants.

As detailed in the accompanying order, defendants must respond to Mr. Okpor's allegations within 14 days.  The parties are reminded that alternate sanctions are available to us should they fail to timely respond.  *Id.* at 143.